# CASES DETERMINED

IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT JUNE TERM, 1863.

~~~~~~~~~~~~~~

#### THE STATE v. ISAAC STONE.

The stealing of lead water-pipe, fixed to a paper mill, is indictable under the 66th section of the statute respecting crimes. *Nix. Dig.* 188.

---

For the State, *H. C. Pitney.*

For the defendant, *A. W. Cutler.*

VREDENBURGH, J.   The defendant was convicted, in the Morris Oyer, of stealing two hundred pounds weight of lead water-pipe, fixed to a paper mill of Joseph Alexander. Whereupon the court reserved the question, whether the defendant could be legally convicted under the statute. *Nix. Dig.* 188, § 66.*

This section provides that if any person shall steal or shall rip, cut, or break, with intent to steal, any lead or iron bar, iron rail, iron gate, or iron palisade, or any lock fixed to any building of another, he shall be deemed guilty of a misdemeanor.

---

* *Rev., p.* 250, § 132.

299

State v. Stone.

It is contended, on the part of the defendant, that the terms of the act do not include lead water-pipe, but only lead bars; that the term lead is used as an adjective. The act in question is a copy of the act of 4th George 2d, chapter 32, with the exception that the act of George leaves out the word "or" between the words lead and iron, so as to read any lead, iron bar, iron rail, &c. Was the insertion of the word "or" in our act intended to limit the subject of the act, so as to embrace only lead bars fixed to a building, when by the act of 4th George 2d *all* lead whatever fixed to a building is included? I do not think such could have been the intent of the legislature. The word lead was used as a substantive clearly in the act of George, and there was no reason to use it as an adjective in our act of 1796. The same reason existed for using it as a substantive in our act, as in that of George. At both periods, lead was affixed usually to buildings, not in bars, but in sheets, for roofing purposes. On account of its extreme malleability, rogues were in the habit of ripping it off the roof. If our legislature of 1796 intended to use the word lead as an adjective, they must have intended to deprive the act of nearly all its effective force, for lead in bars was not, either at the time of the act of George or our own act of 1796, usually affixed to buildings in that shape. The verb "rip," also in the act, applies properly to lead in sheets, on the roofing, or in other shapes than bars. Bars of lead or iron might be broken or cut, but with respect to lead in that shape the legislature would hardly apply the term "rip." The whole context also shows the word lead is used as a substantive. If it was used only to qualify the noun "bar," why not have repeated it, as well as the word "iron," before each of the other nouns in the sentence; so as to read, if any person shall rip any lead or iron bar, lead or iron rail, lead or iron gate, lead or iron palisade? From the history of the use of lead in buildings, we certainly should have expected our legislature to have used the word lead in the same sense as it was used in that of George. We should hardly expect the legislature to

go to the trouble of protecting lead in its most unusual form, and not protecting it in the form in which it was, when our act was first passed, almost exclusively used. From the softness of lead, it required protection in all its forms; while from the hardness and tenacity of iron, that only wanted protection in the forms specified in the statute, and that is the reason of its peculiar language.

The Oyer should be advised accordingly.

OGDEN and BROWN, Justices, concurred.